UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00031-GNS-CHL

ROY ANDERSON CARVER, JR.                                              PLAINTIFF

v.

HOUCHENS FOOD GROUP, INC., et al.                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 70), and Defendants' Motion for Extension of Time (DN 73), and Plaintiff's Motion for Hearing (DN 75), Plaintiff's Objection to the Magistrate Judge's Order (DN 79), and Plaintiff's Motion for Leave for Petition for Writ of Certiorari to the United States Supreme Court (DN 83). The motions are ripe for adjudication. For the reasons discussed below, Defendants' motions are **GRANTED**, Plaintiff's motions are **DENIED**, and Plaintiff's objection is **OVERRULED**.

### I.     STATEMENT OF FACTS

In March 2018, Plaintiff Roy Carver ("Carver") was hired as the Distribution Center Manager for Defendant, Houchens Food Group, Inc. ("Houchens"). (Defs.' Mot. Summ. J. Ex. B, DN 70-3). On October 10, 2018, Carver was paid $397.05 for 39.3 hours worked during September 30 to October 6. (Defs.' Mot. Summ. J. Ex. E, DN 70-6). Carver's timecard and published work schedule reflected the same hours. (Defs.' Mot. Summ. J. Ex. E; Defs'. Mot. Summ. J. Ex. F, DN 70-7). Carver claimed he worked overtime during the pay period, however, and that his paycheck was $69.95 short. (Carver Dep. 121:19-22, June 22, 2020, DN 70-2). After receiving his paycheck, Carver confronted his supervisor, Defendant Charles Black ("Black"), and demanded he be paid for his overtime immediately. (Defs.' Mot. Summ. J. Ex. C, ¶ 3, DN 70-4).

Black explained he would review Carver's timecards, but Carver continued to demand additional payment. (Defs.' Mot. Summ. J. Ex. C, ¶ 3). Carver claims he was terminated as a result of the confrontation, but Black states that Carver voluntarily quit. (Defs.' Mot. Summ. J. Ex. C, ¶ 3). Carver contends Black or another Houchens' employee, Carrie Hughes ("Hughes"), manipulated his timecard to reflect fewer hours worked. (Carver Dep. 81:12-82:9).

On March 18, 2019, Carver sued Houchens and Black ("Defendants") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the American with Disabilities Act of 1990 ("ADA"), the Kentucky Civil Rights Act of 1964 ("KCRA"), the Fair Labor Standards Act ("FLSA"), and the Sherman Antitrust Act of 1890. (Compl. 4, DN 1). Carver also asserted multiple claims against the Cabinet for Unemployment Insurance of Kentucky ("Cabinet"), for finding that he voluntarily quit his job, and thus denying him employment benefits. The Court dismissed Carver's claims against the Cabinet on September 30, 2019. (Order 1, DN 19). Carver then brought a separate action against Houchens, Black, and the Cabinet, alleging that Houchens conspired with or bribed the governments of Kentucky and Tennessee. *See Carver v. Houchens Food Grp., Inc.,* No. 1:19-CV-00099-GNS-HBB, 2020 WL 2203842, at *5 (W.D. Ky. May 6, 2020). The Court dismissed Carver's second lawsuit except for a U.S.C. § 1983 conspiracy claim against Houchens and consolidated the action here. *Carver*, 2020 WL 2203842, at *8.

On October 31, 2019, Carver filed a notice of appeal for a writ of mandamus in the Sixth Circuit Court of Appeals. (Notice Appeal, DN 25). On March 27, 2020, the Sixth Circuit dismissed Carver's appeal for failure to show cause for filing a late notice of appeal. Order, *Carver v. Houchens Food Grp., Inc.*, No. 16-6262 (6th Cir. Mar. 27, 2020). On August 1, 2020, Defendants moved for summary judgment, with a supplemental motion for enlargement of time

due to their motion being an hour late. (Defs.' Mot. Summ. J., DN 70; Defs.' Mot. Extension, DN 73). Carver responded and moved for a hearing in opposition to Defendants' motion for extension of time. (Pl.'s Resp. Defs.' Mot. Summ. J., DN 72; Pl.'s Mot. Hr'g, DN 75). On November 18, 2020, the Magistrate Judge denied Carver's motions for subpoena and to compel, as well as his motion for a protective order. (Order 2, 3, 5, DN 74). Carver objected to the Order and subsequently moved for leave to file a writ of certiorari in the United States Supreme Court. ((Pl.'s Obj. Order, DN 79; Pl.'s Mot. Leave Pet. Writ, DN 83).

## II.   DISCUSSION

### A.   Writ of Certiorari

Carver seeks review by the United States Supreme Court through a motion to transfer venue pursuant to 28 U.S.C. § 1404, a motion for leave to file a writ of certiorari, and a motion to intervene pursuant to Fed. R. Civ. P. 24. (Pl.'s Obj. Order, Ex. 1, at 4, DN 79-1; Pl.'s Mot. Leave Pet. Writ 10-12; Pl.'s Mot. Leave Pet. Writ 7). A motion to transfer venue under Section 1404 allows the district court to transfer "any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The Supreme Court is not another "district or division", nor is this action subject to the Supreme Court's original jurisdiction. *See* U.S. Const. art. 111, § 2. Likewise, a petition for a writ of certiorari is not filed with the District Court.[1] Finally, Carver does not identify another civil action into which he seeks to intervene. Carvers requests are, therefore, denied.

---

[1] As Carver has not filed a petition in the Supreme Court, this is not an instance where the party is seeking a stay pending the writ. *See, e.g.*, *King v. Harwood*, No. 3:15-CV-762-GNS, 2017 WL 6029633, at *3 (W.D. Ky. Dec. 5, 2017).

### B. Objection to Magistrate Judge Order

Before Defendants moved for summary judgment, Carver moved for a subpoena and to compel production of Houchens' "warehouse inventory sheets". (Pl.'s Mot. Subpoena & Mot. Compel 1, DN 68). Carver also moved for a protective order against Defendants' request for his state and federal tax returns. (Pl.'s Mot. Protective Order, DN 67). The Magistrate Judge denied Carver's motion for a subpoena because he filed it five days late and failed to request a modification of the Scheduling Order or show good cause, and denied his motion to compel because he did not serve written discovery requests upon Defendants. (Order 2, 3, 5). The Magistrate Judge also denied Carver's motion for a protective order because his income was relevant to his claims of wage theft and the issue of mitigation of damages. (Order 5).

Fed. R. Civ. P. 72(a) provides that the district court judge must consider objections to a magistrate judge's order on a non-dispositive matter and must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." A "magistrate judge's factual findings are reviewed under the clearly erroneous standard." *Scott-Warren v. Liberty Life Assurance Co. of Bos.*, No. 3:14-CV-00738-CRS-CHL, 2016 WL 5661774, at *3 (W.D. Ky. Sept. 29, 2016) (citation omitted). Alternatively, a "magistrate judge's legal conclusions are subject to the plenary 'contrary to law' standard." *Id.* (citation omitted).

Carver objects to the Magistrate Judge's denial of his motions for a subpoena and to compel because he believes the Court has inherent authority to modify prior orders and that he may use the subpoena power at any time.[2] (Pl.'s Obj. Order 3-4). On January 15, 2020, Carver filed a

---

[2] Carver's objection also appears to be based on his belief that the Scheduling Order was ordered by a Magistrate Judge who recused himself, and that the discovery deadlines are being used as club to silence him. Although two previous Magistrate Judges recused themselves, the scheduling order was not entered by either of them, nor has the Scheduling Order been used inappropriately. (*See* Order, DN 22; Order, DN 32; Scheduling Order, DN 38).

document entitled "Supplemental Scheduling/Discovery Plan and Re Resolution of Discovery Disputes". (Pl.'s Supp. Scheduling/Discovery Plan, DN 39). Defendants agreed to treat Carver's filing as a request for production of documents. (Order 1, DN 41). Carver, however, did not request the inventory sheets at that time. As discovery proceeded, Carver failed to file his initial disclosures or appear at three telephone conferences. (Order, DN 47, Order, DN 56, Order, DN 74). Later, during Carver's deposition, he referenced the inventory sheets when he stated there were company records that he did not possess but that would indicate when he scanned a product label on site, which would show what day and time he arrived at work. (Carver Dep. 75:12-24). Again, Carver never requested these documents. Upon consideration, the Court agrees with the Magistrate Judge's finding that Carver failed to move for modification of the Scheduling Order and that his motion for a subpoena was, therefore, untimely. *See* Fed. R. Civ. P. 16(b)(4). Similarly, the Court agrees with the Magistrate Judge that Carver failed to request the production of documents prior to his motion to compel, and therefore, his motion must be denied. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv); Fed. R. Civ. P. 37(a)(1); LR 37.1.

Carver also objects to the Order denying his protective order because he believes his tax returns are confidential under federal law and that Defendants requested them for purposes of corporate sabotage. (Pl.'s Obj. Order 5-7). As the Magistrate Judge recognized, "[i]t is well-settled in the Sixth Circuit that tax returns are not privileged from disclosure." (Order 3 (citing *DeMarco v. C & L Masonry, Inc.*, 891 F.2d 1236, 1240 (6th Cir. 1989))). In the Complaint, Carver alleges that Defendants withheld overtime pay and he requests past and future economic damages. (Compl. 7). Similarly, Carver testified that he has maintained full-time employment, earning more money than he did previously with Houchens. (Carver Dep. 92:18-93:1, 124:1-13, 126:19-22). Furthermore, Carver has shown no proof of corporate sabotage. The Court, therefore, agrees with

the Magistrate Judge that Carver's returns are relevant to the issues of damages and mitigation of damages, and that his motion should be denied.

The Court, accordingly, overrules Carver's objection to the Magistrate Judge Order.

### C. **Motion for Summary Judgment**

Defendants moved for summary judgment on Carver's claims on August 1, 2020. (Defs.' Mot. Summ. J.). Carver responded in numerous ways.

#### 1. *Timing*

Carver first claims Defendants failed to meet and confer prior to moving for summary judgment. (Pl.'s Resp. Defs.' Mot. Summ. J. 2). Unlike discovery-related motions, however, there is no requirement for parties to meet and confer before filing a motion for summary judgment. Carver also contends Defendants wrongly waited until just before the pre-trial conference to file the motion and that they should have waited until discovery was complete. (Pl.'s Resp. Defs.' Mot. Summ. J. 2-3). Carver claims Defendants were only allowed to move this early because Houchens has bribed or conspired with the Court. (Pl.'s Resp. Defs. Mot. Summ. J. 4-5). To the contrary, there were no outstanding discovery requests when Defendants moved for summary judgment; in fact, discovery was closed. (Scheduling Order 2-3). Also, Carver had ample time and multiple opportunities to conduct discovery.

Carver also claims the motion is untimely because it was filed after discovery ended on June 22. (Pl.'s Resp. Defs.' Mot. Summ. J. 2). The Scheduling Order set the discovery deadline for June 30, however; the deadline for filing a motion for summary judgment was July 31, 2020. (Scheduling Order 2, 4). Defendants responded to this argument and construed it as an objection due to their motion being filed on August 1, 2020, rather than July 31, 2020. (Defs.' Reply. Defs.' Mot. Summ. J. 2 DN 73; Defs.' Mot. Extension 8, DN 73). At the third telephone conference,

which Carver requested but did not attend, Defendants notified the Magistrate Judge of their technical issues with PACER, which caused them to file their motion on August 1, at 12:58 a.m. EST.[3] (Order, DN 74). Accordingly, Defendants incorporated in their reply a motion for an extension of time. (*See* Defs.' Reply Mot. Summ. J. 8). Carver responded by moving for a hearing in opposition to Defendants' motion. (Pl.'s Mot. Hr'g). Carver contends the Court has consistently shown bias in favor of Houchens by using discovery deadlines as a club against him, by having an *ex parte* communication with Defendants, and as shown by the fact that his appeal to the Sixth Circuit was denied as untimely yet this Court is considering Defendants request for an extension of time. (*See* Pl.'s Mot. Hr'g 3).

"When an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Excusable neglect is an equitable balance of five factors: "(1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Carver contends he'll suffer prejudice because he has not received the warehouse inventory sheets, which he attempted to subpoena and compel. (*See* Pl.'s Mot. Hr'g 9). Carver's alleged prejudice, however, is not because Defendants filed their motion one hour late but because he failed to comply with discovery deadlines. Similarly, as Defendants initially raised this issue with

---

[3] Or July 31, 2020, 11:58 p.m. CST, in Bowling Green where Defendants and Carver reside, and this Court is located.

the Magistrate Judge during a telephone conference and, in fact, raised it for Carver in their own reply, the Court finds Defendants have acted with good faith. Accordingly, Defendants' technical issue, which caused a one-hour delay, constitutes excusable neglect, especially considering the Court's preference to resolve matters on the merits, and the fact that the motion was filed before the midnight deadline C.S.T., where this Court and the parties are located. Similarly, the Magistrate Judge did not conduct an *ex parte* communication by holding a telephone conference requested by Carver, which Carver then failed to attend; nor is the Court responsible for the Sixth Circuit's decision to dismiss Carver's appeal. The Court, therefore, grants Defendants' motion for an extension and denies Carver's motion for a hearing.

### 2. *Motions to Strike, for Sanctions, and for Relief*

Carver also responded to Defendants' motion for summary by moving to strike the exhibits pursuant to Fed. R. Civ. P. 12(f) as contradictory, false, and unreliable. (Pl.'s Resp. Defs.' Mot. Summ. J. 2-4). Rule 12(f) gives the Court authority to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion for summary judgment is not a pleading, however, and Rule 12(f) therefore does not apply.

Carver also moved for sanctions pursuant to 28 U.S.C. § 1927 due to Defendants' vexatious behavior, the Magistrate Judge's "harsh" words in a telephone conference, the Court's abuse of discovery deadlines, and Defendants' demands for his tax returns. (Pl.'s Resp. Defs.' Mot. Summ. J. 5, 10). Pursuant to Section 1927:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  Defendants have not exhibited vexatious behavior in this action, but have instead substantially complied with Court orders.  Defendants have also proceeded in good faith as evidenced by their agreement to construe Carver's earlier filing as a request for production, and their willingness to subpoena records from the Kentucky Unemployment Insurance Commission for Carver.  (Order 1, DN 41; Order 1, DN 59; Order 1, DN 64).

Carver also seeks relief pursuant Fed. R. Civ. P. 60(b)(3), which provides: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for. . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party . . . ." (Pl.'s Resp. Defs.' Mot. Summ. J. 6, 8 (citing Fed. R. Civ. P. 60(b)(3))).  Carver references a telephone conference set for August 8, 2020, which he claims was scheduled 40 days after he requested it.  (Pl.'s Resp. Defs.' Mot. Summ. J. 7).  Carver contends this delay was malicious and meant to prolong his lawsuit in favor of Houchens.  (Pl.'s Resp. Defs.' Mot. Summ. J. 7).  Carver requested the conference but did not attend, and now explains that his failure to attend was due to complications after receiving a flu vaccine.  (Pl.'s Reply Mot. Hr'g 2).  Regardless, Carver has not shown any fraudulent behavior by Defendants.

The Court, therefore, denies Carver's motions and requests.

### 3. *Merits*

Notably absent from Carver's filings or motions is a substantive response to the arguments raised in Defendants' motion for summary judgment.  In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law.  *See* Fed. R. Civ. P. 56(a).  While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as

to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must demonstrate that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Carver primarily claims Defendants violated FLSA by failing to pay him for overtime. (Compl. 6). "FLSA requires employers to pay their employees time-and-a-half for work performed in excess of forty hours per week . . . ." *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004) (citation omitted). It is undisputed that Carver's paycheck accurately reflected the hours recorded on his timecard report and work schedule. (Defs.' Mot. Summ. J. Ex. E; Defs'. Mot. Summ. J. Ex. F). Although Carver maintains his timecard was manipulated by Hughes or Black, he admits he has no personal knowledge of any manipulation, but just that it was common knowledge and "hearsay" that Houchens would do so. (Carver Dep. 82:2-9, 112:1-14). Black's affidavit states he did not manipulate Carver's timecards and that Hughes had no access to the reports. (Defs.' Mot. Summ. J. Ex. C, ¶¶ 5-6). Hughes similarly has sworn she did not manipulate the report. (Defs.' Mot. Summ. J. Ex. I, ¶¶ 2-3, DN 70-10). Accordingly, there is no proof that Defendants violated FLSA and affirmative proof that they did not. Accordingly, the Court grants Defendants' motion.

Carver also claims Defendants fired him because of his race in violation of Title VII. (Compl. 4-5). To prove a prima facie discrimination claim, a plaintiff must "demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse

employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citation omitted). Once a prima facie case is proven, the employer must provide a nondiscriminatory, or race neutral justification for the alleged adverse action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973). Carver's claim is self-defeating, as he has consistently maintained a race neutral justification for his alleged termination:

> Q:   Okay. So, do you believe that you were terminated because of your knowledge of warehouses was threatening to the management.?
> A.   Yes. And I'm not their yes boy. Yes.
> Q.   Understood. Okay. Is that the—is that because your knowledge threatened them and because you are not their yes boy, those are the reasons you believe you were terminated?
> A.   Yes, because it makes them—makes them uneasy.
> Q.   Understood.
> A.   *You have a person in there that knows more than you or knows just as much as you*.

(Carver Dep. 151:1-13 (emphasis added)).

To succeed on Title VII, a plaintiff may produce evidence that "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (citations omitted). Or a plaintiff may produce "circumstantial evidence which would support an inference of discrimination." *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997) (citation omitted). Carver has done neither. Accordingly, there is no genuine issue of fact whether Defendants violated Title VII, and therefore the Court grants Defendants' motion.[4]

---

[4] Carver also claims Defendants violated the KCRA. (Compl. 4). Carver alleged Houchens is a major political donor in Kentucky and that it has used its influence to limit other businesses from growing. (Carver Dep. 142:17-143:15). Carver stated he did not have evidence of these allegations but that he "can get it." (Carver Dep. 143:16-17). Carver also alleges his civil rights were violated because Judge Stivers redacted personal information from a filing and Magistrate Judge King recused himself. (Carver Dep. 146:2-147:13). These allegations are either

Carver similarly alleges Defendants fired him because of his heart valve problems in violation of the ADA. (Compl. 4-5). To succeed on such a claim, a plaintiff must show that:

> "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applications or the disabled person was replaced.

*Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011) (citation omitted). A disability for purposes of the ADA is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual", "a record of such an impairment", or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "An employee cannot be subject to an adverse employment action based on his disability unless the individual decisionmaker responsible for his [adverse employment action] has knowledge of that disability." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016) (citation omitted). In addition to Carver's concession that he believed he was fired for his superior knowledge of warehousing, he also admitted he did not have any physical impairments that substantially limited his life activities and that he did not need or request any accommodation for his job. (Pl.'s Answer Defs.' Req. Admis. 2, DN 60). Likewise, Black states he did not know or perceive any alleged disability. (Defs.' Mot. Summ. J. Ex. C, ¶ 7). Accordingly, there is no genuine issue of fact whether Defendants violated the ADA, and the Court grants Defendants' motion to dismiss this claim.

---

unsupported or irrelevant. *See* KRS 344.020 ("The general purposes of this chapter are: . . . [t]o safeguard all individuals . . . from discrimination because of familial status*, race, color, religion, national origin, sex, age forty (40) and over, or . . . the person's . . . disability* . . . ." (emphasis added)). As Carver's Title VII claim is dismissed, so too is his KCRA claim. *See Ammerman v. Bd. of Educ., of Nicholas Cty.*, 30 S.W.3d 793, 797-98 (Ky. 2000) ("The [KCRA] is similar to Title VII of the 1964 federal Civil Rights Act and should be interpreted consistently with federal law." (internal citation omitted) (citation omitted)); *Est. of Leavell v. Wal-Mart Stores E., Ltd. P'ship*, No. 5:18-CV-00073-GNS, 2020 WL 59829, at *5 n.6 (W.D. Ky. Jan. 6, 2020)

Carver also claims Defendants violated the ADEA, but failed to allege how. (Compl. 4). The ADEA prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). The plaintiff must prove "that age was the 'but-for' cause of their employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). As stated above, however, Carver maintains he was fired due to his superior knowledge and because he was not a "yes boy". Carver has not presented any evidence that he was fired due to his age. Because Carver has not established any genuine issue of fact that Defendants violated the ADEA. Carver's IDEA claim will be dismissed.

Carver next asserts Defendants violated the Sherman Antitrust Act. (Compl. 4). A cause of action under Section 1 of the Sherman Antitrust Act is based on three elements: "(1) the existence of a contract, combination, or conspiracy (2) affecting interstate commerce (3) that imposes an unreasonable restraint on trade." *Churchill Downs Inc. v. Thoroughbred Horsemen's Grp., LLC*, 605 F. Supp. 2d 870, 887 (W.D. Ky. 2009) (citations omitted). Under Section 2, a monopolization claim must establish: "(1) the possession of monopoly power in a relevant market; and (2) the willful acquisition, maintenance, or use of that power by anti-competitive or exclusionary means as opposed to 'growth or development resulting from a superior product, business acumen, or historic accident.'" *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 782 (6th Cir. 2002) (citations omitted). For support, Carver claims Houchens learned of his ability as a "small business owner" to buy higher quality potatoes at a lower price than those being purchased and sold by Houchens in 2018. (Carver Dep. 138:11-139:2). Carver claims an unidentified "major purchasing agent" asked him if he could help Houchens buy the potatoes, and that Carver rejected the offer because they would not pay him for brokering the deals. (Carver Dep. 139:3-142:16).

13

Carver does not have any documentation of these alleged negotiations. (Carver Dep. 142:10-16). Black has sworn neither he, nor Houchens, entered into an agreement to restrain trade among the states or engage in anti-competitive behavior. (Defs.' Mot. Summ. J. Ex. C, ¶¶ 8-9). Carver also claims Houchens has a monopoly over all food workers in Kentucky and Tennessee. (Carver Dep. 151:17-19). Carver's conclusory allegations and vague testimony, however, do not raise a genuine issue of fact whether Defendants violated the Sherman Antitrust Act. The Court therefore grants Defendants' motion to dismiss as to Carver's antitrust claim as well.

Carver's final claim is that Houchens bribed the Cabinet panel and referee adjudicating his unemployment benefits application to deny his claim. *Carver*, 2020 WL 2203842, at *5. Carver has since conceded he does not have any evidence to support this claim: "Q: Do you have any evidence of Houchens making payments to the hearing referee or anyone directly at the unemployment insurance cabinet? A: No, I don't." (Carver Dep. 102:3-6). Furthermore, the referee at Carver's unemployment appeal has sworn she conducted a *de novo* review of his application and denied his claim because he voluntarily quit his job. (Defs.' Mot. Summ. J. Ex. H, ¶ 9, DN 70-9). Likewise, the referee swore: "[a]t no point has Houchens, Charles Black, or anyone on behalf of Houchens or related entities, bribed, attempted to bride, solicited to bribe, or conspired in any capacity to bribe or engage in any other type of *quid pro quo* to influence my ruling . . . ." (Defs.' Mot. Summ. J. Ex. H, ¶ 10). Black likewise denies conspiring with any person or entity against Carver. (Defs.' Mot. Summ. J. Ex. C, ¶ 10). Carvers unsupported allegations do not provide a scintilla of evidence that Houchens bribed any government official. Accordingly, the Court grants Defendants' motion to dismiss this claim.

14

## III. CONCLUSION

For the reasons discussed above, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion for Summary Judgment (DN 70) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

2. Defendants' Motion for Extension of Time (DN 73) is **GRANTED**.

3. Plaintiff's Motion for Hearing (DN 75), and Plaintiff's Motion for Leave for Petition for Writ of Certiorari to the United States Supreme Court (DN 83) are **DENIED**.

4. Plaintiff's Objection to the Magistrate Judge's Order (DN 79) is **OVERRULED**.

5. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

March 4, 2021

cc: counsel of record
    Plaintiff, *pro se*